### NEWTON *v*. FREEMAN.

1. WITNESSES—ESTATES OF DECEDENTS—TESTIMONY AS TO MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED — "HEIRS" — "AS-SIGNS"—OPPOSITE PARTY.

   In a suit by a widow as the administratrix of the estate of her deceased husband for an accounting and to restrain the foreclosure of a mortgage given by deceased and plaintiff as husband and wife, the wife, as personal representative and an heir of her husband, and defendant, mortgagee, as an assign, were both protected by the statute (3 Comp. Laws 1915, § 12553) prohibiting an "opposite" party testifying as to matters equally within the knowledge of the deceased, and both were likewise incompetent to testify to such matters as occurred in the presence of each other and deceased at the time the bargain was made.

2. SAME—WAIVER OF PRIVILEGE—OPENING DOOR—EVIDENCE.

   Where plaintiff testified as to matters equally within the knowledge of her deceased husband and defendant, she waived the privilege of the statute, the door was opened, and defendant had a right to also testify as to such matters.

3. MORTGAGES — FORECLOSURE — INJUNCTION — EVIDENCE — SUF-
   FICIENCY.
   In a suit for an accounting and to restrain the foreclosure of
   a mortgage, the claim of plaintiff that her deceased hus-
   band in his lifetime sold hay and timber which it was
   agreed should be applied in reducing the amount of the
   notes secured by the mortgage, but that such was not done
   and no credit was in fact given therefor, *held*, not sus-
   tained by the record, which sustains defendant's conten-
   tion that credit was given to another account according to
   agreement.

Appeal from Mackinac; Shepherd (Frank), J.
Submitted January 6, 1921. (Docket No. 79.) De-
cided March 30, 1921.

Bill by Nettie Newton, administratrix of the es-
tate of Wilson Newton, deceased, against Frank H.
Freeman, for an accounting, and to enjoin the fore-
closure of a mortgage. From a decree dismissing
the bill, plaintiff appeals. Affirmed.

*James C. Wood*, for plaintiff.

*Prentiss M. Brown*, for defendant.

CLARK, J. The bill was filed for an accounting
and to restrain the foreclosure by the defendant of
a mortgage of real estate given to him by plaintiff's
intestate, Wilson Newton, and his wife, Nettie New-
ton, now the plaintiff, to secure the payment of
notes aggregating $800, made by said mortgagors
and one Obediah Newton, brother of Wilson. It is
plaintiff's claim that in his lifetime Wilson Newton
sold defendant hay and timber at an agreed price to
be credited upon the said notes, and that such
credit had not been given. It is defendant's claim
that the property was purchased by the Freeman
Lumber Company and the credit was to be given
upon other indebtedness of Wilson Newton and

Obediah Newton and that such credit had been
given. When the bargain is said to have been made
there were present plaintiff, her intestate and de-
fendant. The brothers in fishing, farming and lum-
bering at the time of such sale were and for years
prior thereto had been trading as Newton Brothers.
They were also stockholders, as was defendant, in
the Lyman Ferguson Company, which conducted a
store at Gould City in charge principally of Obediah
Newton. Wilson Newton and wife lived upon a
farm several miles from Gould City. Obediah lived
in Gould City but at times worked on the farm.
There was evidence that the farm belonged to the
brothers, though it was said that Wilson Newton
had claimed to be the sole owner.

The groceries and other supplies for the farm
were purchased largely at the store of the Lyman
Ferguson Company and charged to the account of
Newton Brothers. Products of the farm sold to
the company were credited to such account. On the
company's books there was no account in the
name of Wilson Newton. The common method of
paying bills by Newton Brothers in their various
operations including farming seems to have been
by issuing orders which were paid by the Lyman
Ferguson Company and charged to their account.

When the sale in question was made Newton
Brothers owed the Lyman Ferguson Company a
large amount. The hay was a product of the said
farm. The brothers, it seems, owned other lands.
The record is not clear as to where the timber in
question was produced, nor as to the value of it
but there was positive testimony that it was the
property of Newton Brothers.

Defendant was manager of the Freeman Lumber
Company in charge of its operations at Engadine.
In a letter to Wilson Newton of July 1, 1916, the

Freeman Lumber Company, stating the price, requested delivery of hay. Wilson Newton in person or by others, and assisted by Obediah Newton, shipped the hay to the Badger Hay Company, the bill of lading being signed "Freeman Lumber Company, shipper, per Wilson Newton." For the property received from Wilson Newton or from Newton Brothers the Freeman Lumber Company credited the account of the Lyman Ferguson Company and the Lyman Ferguson Company credited the account of Newton Brothers, which, as defendant claims, was according to the agreement.

Wilson Newton died in April, 1917. In October, 1917, plaintiff and Obediah Newton paid the interest upon the mortgage debt of $800 in full to April 10, 1917. This payment was by check of Obediah which Mrs. Newton indorsed although she says she protested and was frightened as a result of the threatening manner and words of the defendant. Later defendant sent to plaintiff a statement of interest due upon the mortgage which she paid by check in full to April 10, 1918. Defendant having begun the foreclosure of the mortgage, the bill was filed in August, 1919. Defendant answered. Plaintiff and defendant testified at length as to the bargain with the deceased. The court dismissed the bill and plaintiff has appealed.

Because of section 12553, 3 Comp. Laws 1915, the testimony of both plaintiff and defendant was incompetent as to matters equally within the knowledge of the deceased. Among the persons protected by the statute as to opposite parties are heirs, personal representatives of the deceased and assigns. The plaintiff was the personal representative of the deceased and she was an heir and the defendant mortgagee was an assign within the meaning of the statute. See *Taylor* v. *Carter*, 211 Mich. 365; *Peir-*

*son* v. *McNeal,* 137 Mich. 158; *Chambers* v. *Hill,* 34 Mich. 523; *Shepard* v. *Shepard,* 164 Mich. 183; *Carr* v. *Carr,* 138 Mich. 396; *Sheldon* v. *Carr,* 139 Mich. 654; *Loomis* v. *Loomis,* 178 Mich. 221; *Beadle* v. *Anderson,* 158 Mich. 483; *Knight* v. *Hartman,* 93 Mich. 69; *Wallace* v. *Wallace,* 63 Mich. 326; *Youngs* v. *Cunningham,* 57 Mich. 153; *Howard* v. *Patrick,* 43 Mich. 121; *Penny* v. *Croul,* 87 Mich. 15 (13 L. R. A. 83); *Bailey* v. *Holden,* 113 Mich. 402. See, also, Perkins' Evidence by Survivor, pp. 120, 121.

But the plaintiff on her direct examination testified at length to the conversation between her deceased husband and defendant respecting the bargain and sale, matters equally within the knowledge of the deceased. Whether counsel for defendant objected to the testimony is in dispute. Counsel insists that he did but the record fails to show it. But in any event by such testimony the door was opened to testimony by defendant as to the same matters, and defendant had a right to testify as to such matters, which he did subject to repeated objection of plaintiff's counsel. The protection of the statute was waived.

"It is believed that there is a fourth ground of waiver, although there are no Michigan cases where the question has been directly presented. Thus, in suits or proceedings wherein the protected parties, or some of them, are in antagonism; as, between assign and assign, heir and assign, the estate and assign, or any other combination likely to arise, if one of the protected parties testifies on direct examination to prohibited matters, or causes an interested witness so to testify, the door is thereby opened to the opposite party to testify, or produce an interested witness to testify, to the same matters. This result follows whether the testimony, when offered, is objected to or not. The opposite party by so introducing the prohibited testimony has waived the

statute. The other protected party may either: 1. Object to the testimony and rely upon his objection; 2. Let the testimony be received without objection, in which event he also waives the statute; or 3. Notwithstanding his objection, offer equally incompetent testimony as to the same matter, in which event he waives not only his objection but also the statute." Perkins' Evidence by Survivor, pp. 214, 215.

See, also, *Butz* v. *Schwartz*, 135 Ill. 180 (25 N. E. 1007); *Parrish* v. *McNeal*, 36 Neb. 727 (55 N. W. 222); *Boardman* v. *Brown,* 114 Iowa, 678 (87 N. W. 674); *Corning* v. *Walker*, 100 N. Y. 547 (3 N. E. 290); *Booth* v. *Lenox*, 45 Fla. 191 (34 South. 566); *Shipp* v. *Davis*, 78 Ga. 201 (2 S. E. 549); *Kelton* v. *Hill*, 59 Me. 259.

The trial court, upon motion to strike plaintiff's testimony made after the trial and upon the submission of the cause upon briefs, in his opinion filed in the cause, held plaintiff's testimony as to such matters incompetent and held defendant's testimony as to such matters likewise. incompetent, and without consideration of such testimony reached the conclusion stated. A consideration of such testimony does not change the result. The facts which we have reviewed, particularly the method of accounting, the business relations of the parties, the subsequent payments of interest upon the mortgage, lead to the conclusion reached by the trial court.

The decree is affirmed, with costs to defendant.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.